[No. 41542.    En Banc.    May 13, 1971.]

W. W. Cole et al., *Appellants*, v. Washington Utilities and Transportation Commission et al., *Respondents*.

*Rutherford, Kargianis & Austin,* by *George Kargianis,* for appellants.

*Slade Gorton, Attorney General,* and *Robert E. Simpson, Assistant,* for respondent Washington Util. & Transp. Comm'n.

*Cartano, Botzer & Chapman,* by *John W. Chapman,* for respondent Washington Natural Gas Co.

McGovern, J.—This is an appeal from an order of the Superior Court for Thurston County which affirmed a ruling of the Washington Utilities and Transportation Commission that certain promotional practices of Washington Natural Gas Company were appropriate for a regulated public service corporation. The appeal also challenges the commission's refusal to allow the intervention of the Oil Heat Institute in the administrative hearing or the amendment of the appellants' complaint to include the institute's charges. Stated simply, the suit involves an attempt by the fuel oil industry to halt a program of Washington Natural Gas Company that has dramatically expanded the latter's market at the expense of other competitive fuel dealers.

In 1957, Washington Natural Gas Company (hereinafter the gas company) began offering new home "dry-out" gas service to home builders at a lower rate than that which it normally charged its residential customers. It was hoped that the practice would build service on existing gas mains

and promote the use of gas in areas of new construction. The cheaper "dry-out" rate did induce more builders to use gas heating and appliances, but the gas company felt that further promotions were necessary to realize the potential consumer use of existing facilities. In 1961, the utility started renting conversion burners to home owners for $1.95 per month. Thus, for a low monthly charge, residents along existing gas mains were able to convert their oil furnaces to gas use without having to purchase an expensive unit. The program was successful to the extent that the gas company expanded its leasing service in 1964 to include gas circulating heaters, furnaces and water heaters.

Cole, a fuel oil dealer and residential customer of Washington Natural Gas Company, complained, in 1965, to the Washington Utilities and Transportation Commission (hereinafter the commission) that the low-cost leasing program and "dry-out" rate were being operated as "loss leaders" to gain new gas customers at the expense of the gas company's existing customers, who were forced to subsidize the promotions with higher rates. (An amended complaint was filed shortly thereafter by 25 other gas consumers who failed to appear at the subsequent proceedings.)

In February 1966, public hearings were held on the rate complaint. The Oil Heat Institute (hereinafter the institute), an association of independent fuel oil dealers, attempted to intervene in the proceedings in order to show the adverse impact of the gas company's promotional practices on local fuel oil dealers. The commission twice denied the institute's petition for leave to intervene and denied subsequent motions by the appellants to amend the pleadings to include this broader area of concern. The commission determined that, under existing law, a rate complainant entitled to be heard had to be a gas consumer and that the institute, therefore, had no standing to intervene. Secondly, the commission held that it had no jurisdiction to examine the economic effects of practices of a regulated public service utility upon nonregulated competitors. Commission counsel also raised the question of whether or not

the leasing program of the gas company was a "jurisdictional" activity of a regulated public service utility.

The commission's final order in 1968 approved the challenged activities of the gas company as permissible under state law. On appeal, the Superior Court for Thurston County affirmed the ruling of the commission, including its ruling that the attempted intervention of the institute and the related motions to amend the complaint were improper. This appeal followed.

Appellants reargue here the same issues which were resolved adversely to them at both the administrative and trial court levels. And for the same reasons announced in those proceedings, we affirm the commission and trial court rulings in favor of the gas company.

We believe that the trial court correctly affirmed the commission's denials of the institute's petitions to intervene and the appellants' motions to amend the complaint. Appellants contend that the institute should have been allowed to participate in the proceedings because the commission is required under RCW 80.01.040 (3) to "regulate in the public interest" and the public interest is best served by a thorough examination of the competitive imbalances caused by the gas company's promotional practices.

However, rule 7.3 of the commission's Rules of Practice and Procedure, now WAC 480-08-070 (3), delineates the factors which the commission should consider in deciding whether or not to grant a petition to intervene:

> If it appears  .  .  .  that the petition or motion discloses a substantial interest in the subject matter of the hearing, or that participation of the petitioner may be in the public interest, the Commission *may* grant the same  .  .  .

(Italics ours.)

Under the facts before us, it is doubtful whether the institute can prove a "substantial interest" in rates charged to customers of a competitor who is regulated by different laws and who provides an entirely different type of fuel service. Secondly, it is clear that the institute's objections

are beyond the concern of the commission under a reasonable interpretation of the term "public interest." At page 12 of the proposed order, the commission concluded that it had

jurisdiction only to consider the effects of competitive practices of one regulated utility upon another regulated utility and no other business. Although the words "public interest" are used extensively throughout the Public Service Laws, this interest of the public which is to be protected is that only of customers of the utilities which are regulated.

■ This interpretation by the commission of its regulatory power is amply supported by statute and case law. Although RCW 80.01.040(3) demands regulation in the public interest, that mandate is qualified by the following clause "as provided by the public service laws . . ." Appellants fail to point out any section of title 80 which suggests that nonregulated fuel oil dealers are within the jurisdictional concern of the commission. An administrative agency must be strictly limited in its operations to those powers granted by the legislature. *State ex rel. PUD 1 v. Department of Pub. Serv.*, 21 Wn.2d 201, 150 P.2d 709 (1944). We conclude that the commission correctly determined that it had no authority to consider the effect of a regulated utility upon a nonregulated business.

Our viewpoint is in accord with the weight of authority elsewhere. *Re Promotional Activities by Gas & Elec. Corps.*, 68 P.U.R.3d 162 (1967); *Re Promotional Practices of Elec. & Gas Util.*, 65 P.U.R.3d 405 (1966); *Virginia State Corp. Comm'n v. Appalachian Power Co.*, 65 P.U.R.3d 283 (1966); *Superior Propane Co. v. South Jersey Gas Co.*, 60 P.U.R.3d 217 (1965); *Illinois Coal Operators' Ass'n v. Peoples Gas Light & Coke Co.*, 7 P.U.R. (n.s.) 403 (1934).

■ Since the commission had neither express nor implied authority to examine the institute's contentions, its denial of the institute's petition to intervene was both proper and reasonable. We also note that even if the institute could demonstrate that it has a "substantial interest" that is cognizable under title 80, the commission still retains the discretion to grant intervention. There was no

showing that such discretion was manifestly abused by the denial of the institute's petitions. For similar reasons, we hold that the appellants' motions to amend the complaint to require consideration of the effect of the gas company's promotional practices upon nonregulated fuel dealers were properly denied.

Appellants next argue that the leasing of gas appliances is not a "jurisdictional" activity of a regulated utility. They find support for that contention in *Re Intermountain Gas Co.*, 67 P.U.R.3d 511 (1967) and RCW 80.04.270. The latter statute requires that profits and losses associated with the "sale of merchandise or appliances" by public service companies be separately accounted and excluded from those accounts used to determine rates. Because the leasing program has virtually displaced sales, appellants maintain that the gas company is merchandising gas appliances within the spirit of the statute.

We disagree. As noted by the commission's order, *Re Intermountain Gas Co., supra,* cited by the appellants, is readily distinguishable and is clearly a minority view. Such cases as *Re Promotional Activities by Gas & Elec. Corps.*, 68 P.U.R.3d 162 (1967), *Re Lakeland Natural Gas Ltd.*, 70 P.U.R.3d 1 (1967), *Re Promotional Practices of Elec. & Gas Util.*, 65 P.U.R.3d 405 (1966), and *Re City Gas Co.*, 64 P.U.R.3d 518 (1966), suggest that this leasing activity of the gas company is an appropriate method of stimulating growth of the utility enterprise.

It is also apparent that there is a well-recognized difference in meaning between the terms "sale" and "lease," and that the jurisdictional exclusion of RCW 80.04.270 relates only to the former. Absent proof by the appellants of incidents of sale in the agreement between the gas company and its customers, appellants cannot expect the commission to decide that a common lease falls within the purview of RCW 80.04.270. An administrative agency cannot amend its statutory framework under the guise of interpretation. *State v. Spino,* 61 Wn.2d 246, 377 P.2d 868

(1963); *Fisher Flouring Mills Co. v. State*, 35 Wn.2d 482, 213 P.2d 938 (1950).

■ Applying the rule that the words of a statute must be given their usual and ordinary meaning (*King County v. Seattle*, 70 Wn.2d 988, 425 P.2d 887 (1967); *In re Estate of Phillips*, 193 Wash. 194, 74 P.2d 1015 (1938)), we cannot see how the word "sale" in RCW 80.04.270 can include this ordinary leasing activity.

The respondent commission also supports its conclusion that the leasing of appliances is a jurisdictional activity by references to RCW 80.04.130 and .150 which refer to a "rental" charge or to RCW 80.28.010 and .100 which refer to charge for "any other service rendered" or "in connection therewith." Because no clause or individual words of a statute should be deemed superfluous (*Kasper v. Edmonds*, 69 Wn.2d 799, 420 P.2d 346 (1966)), we assume that the legislature contemplated that public service corporations would engage in rental and leasing programs. More persuasive is a decision of one of the commission's predecessor commissions suggesting that the legislature early recognized the need for regulated utilities to engage in promotional activities similar to those which are challenged here. *Department of Pub. Serv. v. Pacific Power & Light Co.*, 13 P.U.R. (n.s.) 187 (1936).

We concur with the conclusion in *Re City Gas Co.*, 64 P.U.R.3d 518, 521 (1966), that "the appliance-leasing practice . . . is a justifiable means of promoting the sale of natural gas."

Finally, appellants urge that the leasing program and the "dry-out" rate are violative of state statutes prohibiting discriminatory, noncompensatory and unreasonable rates. They argue that the figures and computations of the gas company failed to include certain associated costs of these programs and improperly included subsequent gas revenues with the revenues directly attributable to the rental charges. According to the appellants' accounting, these programs are being operated at a loss and thus in violation of

RCW 80.28.020.[1] They also suggest that RCW 80.28.090[2] and RCW 80.28.100[3], which prohibit rate discrimination, are being contravened by the different rates charged to "dry-out" contractors and to existing residential customers for the same basic type of service.

We start with the presumption that the findings of the commission are prima facie correct and that the burden of proof is upon the appellants to demonstrate that those findings and conclusions are unlawful, unsupported by the evidence, arbitrary or capricious. *State ex rel. Bremerton Transfer & Storage Co. v. Washington Util. & Transp. Comm'n*, 67 Wn.2d 876, 410 P.2d 602 (1966); *Northern Pac. Transp. Co. v. Washington Util. & Transp. Comm'n*, 69 Wn.2d 472, 418 P.2d 735 (1966). This is especially true where, as here, the issues involve complex factual determinations peculiarly within the expertise of the commission and where the proceedings were only concluded after 13 days of testimony and 1,700 pages of transcript.

We are persuaded that the commission and the trial court

---

[1] RCW 80.28.020. "Whenever the commission shall find, after a hearing had upon its own motion, or upon complaint, that the rates or charges demanded, exacted, charged or collected by any gas company . . . for gas . . . are insufficient to yield a reasonable compensation for the service rendered, the commission shall determine the just, reasonable, or sufficient rates . . . to be thereafter observed and in force, and shall fix the same by order."

[2] RCW 80.28.090. "No gas company, electrical company or water company shall make or grant any undue or unreasonable preference or advantage to any person, corporation, or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

[3] RCW 80.28.100. "No gas company, electrical company or water company shall, directly or indirectly, or by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person or corporation a greater or less compensation for gas, electricity or water, or for any service rendered or to be rendered, or in connection therewith, except as authorized in this chapter, than it charges, demands, collects or receives from any other person or corporation for doing a like or contemporaneous service with respect thereto under the same or substantially similar circumstances or conditions."

correctly found that the leasing program was legal, fully compensatory and of great benefit to the utility and to its consumers. Typical of the theme of the commission's conclusions is their statement at page 31 of the proposed order (adopted as the final order on November 1, 1968) *"that the rental program has resulted in the company being able to improve earnings, reduce rates and gain more customers. . . . It has been of benefit to all its customers."* We believe that the reasons given by the respondent gas company for its accounting processes are logical, proper and well supported by the evidence. And we would be hesitant to challenge those findings upon the testimony and exhibits of the appellants' witnesses, which evidence the commission termed "inadequate, unreliable, and erroneous . . . based upon unsupported assumptions, conjectures, opinions . . . errors and broad, unsupported 'estimates.'" Commission finding of fact 5.

We conclude that the leasing program is providing a "reasonable compensation" within the meaning of RCW 80.28.020 and that the customers of the gas company are in no way subsidizing this program. Similarly, the commission found that the interim "dry-out" revenues exceeded the actual and direct costs of the service offered to building contractors. We also conclude that this program is fully compensatory, that it promotes new gas customers and that it provides additional revenues usually unavailable prior to occupancy of the homes involved.

■ It is contended that the difference in rates offered to a contractor and a residential consumer constitutes an illegal rate discrimination. There is a valid distinction between temporary service to a vacant and perhaps untenantable structure and regular service to an occupied residence. Rate classifications premised on reasonable differences in conditions and costs are an accepted part of utility rate making. *Re Potomac Edison Co.,* 68 P.U.R.3d 155 (1967). This court previously considered a suit based on the statute that is now RCW 80.28.100 in *State ex rel. Model Water & Light Co. v. Department of Pub. Serv.,* 199 Wash. 24, 90

P.2d 243 (1939). While determining that there was no un-
lawful discrimination in the different electrical rates
charged to local water districts, we remarked, at page 36:

> A mere difference in rates does not, of itself, constitute
> an unlawful discrimination. *State ex rel. Puget Sound P.
> & L. Co. v. Department of Public Works*, 181 Wash. 105,
> 42 P. (2d) 424. A comparison of rates may be persuasive
> and may be controlling, but only when it is also shown
> that the conditions are comparable and that the rates
> used for comparison are just, fair, reasonable, and suffi-
> cient. *Logan City v. Public Utilities Commission*, 77 Utah
> 442, 296 Pac. 1006.

We agree with the commission and the trial court that
the conditions here are not comparable. In any case, the
statute condemns "undue or unreasonable preference" be-
tween similarly situated customers. If there is a preference
demonstrated, it is patently reasonable in inducing the use
of gas service at an earlier date than actual occupancy.
RCW 80.28.090 and RCW 80.28.100 are thus not offended by
this practice.

The judgment of the Superior Court for Thurston County
is affirmed.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD,
and WRIGHT, JJ., concur.

ROSELLINI, J., concurs in the result.

Petition for rehearing denied July 1, 1971.