Laurel WATERS, Plaintiff-Appellant,

v.

HEUBLEIN, INC. and United Vintners,
Inc., Defendants-Appellees.

Laurel WATERS, Plaintiff,

Equal Opportunity Commission,
Plaintiff-Intervenor-Appellant,

v.

HEUBLEIN, INC. and United Vintners,
Inc., corporations, Defendants-Appellees.

Nos. 74–2870, 74–2871.

United States Court of Appeals,
Ninth Circuit.

Nov. 12, 1976.

Rehearing and Rehearing En Banc
Denied March 21, 1977.

Pregerson, District Judge, sitting by
designation, concurred specially and filed
opinion.

Susan J. Johnson, Atty. (argued), of E.E.O.C., Appellate Division, Washington, D. C., Robert Gelman (argued), San Francisco, Cal., for plaintiff-appellant.

R. L. Maines (argued), San Francisco, Cal., for defendants-appellees.

Before CHAMBERS and DUNIWAY, Circuit Judges, and PREGERSON,* District Judge.

* The Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

DUNIWAY, Circuit Judge:

Plaintiff, Laurel Waters, filed this action in the district court under § 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5,** charging defendants Heublein and United Vintners with discriminatory employment practices against women, Blacks, and Spanish-surnamed Americans, and seeking compensatory and injunctive relief. The U. S. Equal Employment Opportunity Commission (EEOC) intervened as a plaintiff, see F.R.Civ.P. 24(b), 42 U.S.C. §§ 2000e–4(g)(6), 2000e–5(f)(1). The district court dismissed the claims of discrimination based on race and national origin, for lack of standing on Waters' part to assert them. The plaintiffs appeal invoking this court's jurisdiction under 28 U.S.C. § 1292(a). We reverse.

Laurel Waters, a white woman, was hired by defendant United Vintners in October, 1969. On June 18, 1970, she filed two complaints against her employer with the EEOC. The first alleged the following:

I am doing the same job as men have done for more pay.

I think women are discriminated against by this company by being hired in low-pay and low-status work compared to men, in job assignments and in promotions.

I think the same is true of Negroes—they are discriminated against in the same way, as are other minority groups.

Later, she filed an amended charge. It repeated the sex discrimination claim, but did not mention racial or ethnic discrimination. Her third and final charge alleged that she was denied a raise in retaliation for filing her earlier complaints. After January 31, 1971, Waters ceased working for United Vintners. The reason for her leaving does not appear in the record.

In December, 1971, the District Director of EEOC made findings of fact bearing out the substance of the charges. EEOC failed

** "All citations to the Civil Rights Act of 1964 refer to that Act as amended by Act of March 24, 1972, 86 Stat. 104 (Supp. VI 1976)."

to resolve the dispute with United Vintners through informal conciliation and issued to Waters a statutory notice of right to sue. She filed this action within 90 days of its receipt.

I. *Appealability.*

■ 28 U.S.C. § 1292(a) provides:

The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States . . . refusing . . . injunctions. . . .

We and other courts have interpreted section 1292(a) as allowing appeals from orders either narrowing the range of activity about which plaintiffs seeking an injunction may complain, *Spangler v. United States,* 9 Cir., 1969, 415 F.2d 1242, 1247; *Jones v. Diamond,* 5 Cir., 1975, 519 F.2d 1090, 1095; or restricting the breadth of relief to which such plaintiffs might otherwise be entitled. *Price v. Lucky Stores, Inc.,* 9 Cir., 1974, 501 F.2d 1177, 1179; *Spangler v. United States, supra,* 415 F.2d at 1247; *Jones v. Diamond, supra,* 519 F.2d at 1096. The order from which plaintiffs have appealed meets both tests. It bars Waters from asserting discrimination against Blacks and Spanish-surnamed Americans in her individual Title VII action; it also prevents her from seeking relief on behalf of those against whom the discrimination is directed. It is, therefore, appealable.

II. *Exhaustion of Administrative Remedies.*

■ The defendants argue that Waters has not exhausted available administrative remedies for the purpose of eliminating discrimination against Blacks and Spanish-surnamed employees as required by § 706(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b). We do not agree. The requirements of exhaustion are few. To comply with § 706(b), a plaintiff need do no more than file a timely charge with the EEOC and receive a notice of right to sue. *McDonnell Douglas Corp. v. Green,* 1973, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Beverly v. Lone Star Constr. Corp.,* 5 Cir., 1971, 437 F.2d 1136, 1139–40. The

plaintiff is not barred from bringing suit by the EEOC's allegedly incomplete investigation or less than vigorous attempts at conciliation. *McDonnell Douglas, supra; Dent v. St. Louis-San Francisco Ry.,* 5 Cir., 1969, 406 F.2d 399, 402. Nor does the failure to file the charges with an agency established by state or local civil rights laws, as contemplated by 42 U.S.C. § 2000e–5(c), pose a jurisdictional barrier to suit. *EEOC v. Wah Chang Albany Corp.,* 9 Cir., 1974, 499 F.2d 187, 189 n.3; *Parker v. General Telephone Co.,* 9 Cir., 1973, 476 F.2d 595.

■ The defendants concede that Waters received statutory notice of right to sue; the only question is whether that notice encompassed charges of racial, ethnic, and sex discrimination, or only charges of sex discrimination. Waters' first complaint to the EEOC charged the defendants with all three types of discrimination. Defendants argue that because Waters' "amended" charge mentioned only sex discrimination, she abandoned that portion of her earlier complaint alleging discrimination based on race and national origin. They buttress this argument by pointing out that in her complaints, in response to a question in the EEOC form that asked her to indicate what type of discrimination her charge dealt with, Waters checked only the box marked "sex." We cannot agree. "Nothing in the Act commands or even condones the application of archaic pleading concepts. On the contrary, the Act was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *Sanchez v. Standard Brands, Inc.,* 5 Cir., 1970, 431 F.2d 455, 465; *accord Love v. Pullman Co.,* 1972, 404 U.S. 522, 526–27, 92 S.Ct. 616, 30 L.Ed.2d 679. It is the substance of the complaint, not its label, with which Title VII is concerned, and, as Judge Goldberg said in *Sanchez, supra,* "[i]n the context of Title VII, no one—not even the unschooled—should be boxed out." 431 F.2d at 463. Thus, the EEOC and the court had jurisdiction over the charges of racial and ethnic discrimination.

■ Moreover, although the record contains no evidence that those charges had

been brought to the attention of state or local agencies before this action was filed, *see* 42 U.S.C. § 2000e–5(c), it does show that in August, 1973, while this action was pending, EEOC sent a copy of all three charges to the California Fair Employment Practices Commission (FEPC), and that on August 29, 1973, FEPC waived jurisdiction. This permits the court to proceed with the action in the case at bar. *Motorola, Inc. v. EEOC,* 9 Cir., 1972, 460 F.2d 1245, 1246; *Parker v. General Telephone Co., supra,* 476 F.2d at 596; *Pacific Maritime Ass'n v. Quinn,* 9 Cir., 1972, 465 F.2d 108; *Love v. Pullman Co., supra.*

### III. *Standing.*

 Waters is white. The discrimination charged here is directed at Blacks and Hispanic-Americans. Whether Waters has standing to sue to enjoin discrimination against groups to which she does not belong depends on whether she is a "person claiming to be aggrieved" by such discrimination. §§ 706(b), (f)(1) of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e–5(b), (f)(1). We find this case logically indistinguishable from *Trafficante v. Metropolitan Life Ins. Co.,* 1972, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415, and we therefore agree with Waters that she has standing.

*Trafficante* concerned racial discrimination in housing in violation of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–17. Two tenants—one white, one black—of an apartment complex owned and operated by the defendant brought suit to end discriminatory rental policies aimed at non-whites. The district court dismissed finding the plaintiffs to be without standing. 322 F.Supp. 352. This court affirmed for the same reason. 446 F.2d 1158. A unanimous Supreme Court reversed holding that the term "person aggrieved" in 42 U.S.C. § 3610(a) includes persons not themselves the objects of discrimination, who are injured "[by] the loss of important benefits from interracial associations." 409 U.S. at 209–10, 93 S.Ct. at 367. That analysis of the standing question applies with equal force to actions brought under Title VII, the purpose and structure of which is "func-

tionally identical" to the fair housing legislation construed in *Trafficante.* *Work Environment Injury Under Title VII,* 82 Yale L.J. 1695, 1701–02 (1973).

We cannot agree with the view of the district court that Title VII is much narrower in scope than Title VIII:

> Title VIII was intended to ensure all persons a living environment free from unlawful discrimination. This court is not persuaded, however, that Congress sought through Title VII to protect whatever interest white persons might have in working in an environment which is free from discrimination against racial and ethnic minorities. Unlike Title VIII, which was intended to change living environments for all by changing housing patterns through ending housing discrimination, Title VII is aimed at lifting economically persons belonging to racial and ethnic minorities by providing equal access to employment opportunities.

8 EPD ¶ 9522, at 5308 (footnote omitted).

We have no doubt that one of the purposes of Title VII is the purpose stated by the district court. But interpersonal contacts—between members of the same or different races—are no less a part of the work environment than of the home environment. Indeed, in modern America, a person is as likely, and often more likely to know his fellow workers than the tenants next door or down the hall. The possibilities of advantageous personal, professional or business contacts are certainly as great at work as at home. The benefits of interracial harmony are as great in either locale. The distinction between laws aimed at desegregation and laws aimed at equal opportunity is illusory. These goals are opposite sides of the same coin.

It is not significant that the EEOC has enforcement powers under Title VII which HUD does not have under Title VIII. *Compare* 42 U.S.C. § 2000e–5(f) *with* 42 U.S.C. § 3610(d). Before the passage of Pub.L. No. 92–261, § 4(a), 86 Stat. 104, in 1972, the enforcement procedures of Titles VII and VIII were virtually identical. The 1972 legislation was designed to expand the cover-

age of and increase compliance with the equal employment opportunity provisions of Title VII. Conference Report on H.R. 1746, *1972 U.S.Code Cong. & Admin.News* 2179. We do not find in the language or history of the 1972 Act any intention to narrow the class of plaintiffs who might bring suit. To imply one would be inconsistent with the Act's manifest purpose.

Finally, we note that the extension of *Trafficante* to the Title VII area really makes no new law. In defining "person aggrieved" for Title VIII purposes, the Supreme Court looked to the Third Circuit's opinion in *Hackett v. McGuire Bros., Inc.*, 3 Cir., 1971, 445 F.2d 442, a Title VII action. 409 U.S. at 209, 93 S.Ct. 365. Our decision here is but a reapplication of the same approach.

Our holding accords with the EEOC's own interpretations of §§ 706(b) and (f)(1). *See* EEOC Decision No. 72–0591 (1971), CCH EEOC Decisions (1973) ¶ 6314, at 4564; EEOC Decision No. 71–909 (1970), CCH EEOC Decisions (1973) ¶ 6193, at 4329; Note, *Work Environment Injury, supra*, 82 Yale L.J. at 1698 & n.29. "The administrative interpretation of the Act by the [EEOC] is entitled to great deference." *Griggs v. Duke Power Co.*, 1971, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158.

■ It is important to note the limits of our decision. We hold only that Waters has standing to sue to redress racial and ethnic discrimination.[1] We do not decide whether she is an adequate class representative for Blacks and Spanish-surnamed Americans who may have been the objects of discrimination. *See* F.R.Civ.P. 23(a). That question remains open on remand.

Reversed and remanded for further proceedings.

PREGERSON, District Judge (concurring specially):

I concur wholeheartedly in Judge Duniway's scholarly opinion that applies a liberal approach to the question of standing in a civil rights class action. This approach is consistent with that taken by me in *Manhart v. City of Los Angeles, Dept. of W. & P.*, 387 F.Supp. 980 (C.D.Cal.1975). Seven years ago, I denied class certification in *Burney v. North American Rockwell Corp.*, 302 F.Supp. 86 (C.D.Cal.1969). My ruling in *Burney* could be misconstrued as taking an overly restrictive view of standing and F.R. Civ.P. 23(a)(2)'s requirement of common questions of law and fact. In *Burney*, I erroneously treated the question of plaintiff's ability to "fairly and adequately" represent a broad-based class as a subset of standing, whereas the denial of class certification properly should have rested solely on my determination that the named plaintiff failed to show that he could "fairly and adequately protect the interests of the class" as required by F.R.Civ.P. 23(a)(4).

---

**1.** We are persuaded that the rather casual dictum, supported by no cited authority, in *EEOC v. Occidental Life Ins. Co. of Calif.*, 9 Cir., 1976, 535 F.2d 533 at 542, should not be followed here. There, we said:

> It remains true that Ms. Edelson would not have had "standing" to charge Occidental with discrimination against unmarried female employees (Ms. Edelson was married), or against male employees with respect to retirement.

The question of Ms. Edelson's standing was not before us in that case; she was not a plaintiff. In the light of *Trafficante, supra*, we are convinced that the dictum is inapt in the case at bar, even if it were correct in the Occidental Life case.

In *Occidental Life*, EEOC was the sole plaintiff. In the case at bar, it intervened as a plaintiff. However, its presence does not permit us, on the authority of *Occidental Life*, to avoid deciding the question of Waters' standing. In its order granting EEOC permission to intervene, the district court provided:

> That the Equal Employment Opportunity Commission's motion for leave to intervene in this action is granted upon the condition that the claims it may maintain are limited to and can be no broader than the claims maintained by, the class or classes represented by and the relief prayed for by plaintiff Laurel Waters in this action pursuant to orders of the Court.