[No. 45842.   En Banc.   April 24, 1980.]

MICHAEL L. FAHN, ET AL, *Respondents,* v. COWLITZ
COUNTY, *Defendant,* CIVIL SERVICE COMMISSION OF
COWLITZ COUNTY, *Appellant,* WASHINGTON
STATE HUMAN RIGHTS COMMISSION,
*Respondent.*

*Henry R. Dunn, Prosecuting Attorney,* and *Fred A. Kaseburg, Civil Deputy,* for appellants.

*John A. Barlow* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow,* for respondents.

WILLIAMS, J.—This is a direct appeal by the Cowlitz County Civil Service Commission from a summary judgment based on the commission's violation of an administrative regulation promulgated by the Washington State Human Rights Commission. The Civil Service Commission challenges both the validity of the regulation and the trial court's award of damages and attorney fees to respondents Michael L. Fahn and Day D. Parkhill. We find a portion of the regulation to fall outside the delegated authority of the Human Rights Commission and therefore reverse the trial court's order of summary judgment and the award of damages and attorney fees.

Appellant Cowlitz County Civil Service Commission is an agency charged with the duty to establish a merit system of employment for county deputy sheriffs, pursuant to RCW 41.14. Among appellant's rules and regulations is a requirement that applicants for the position of deputy sheriff be at least 5 feet 9 inches tall.[1] Respondents are both white males who desire to become deputy sheriffs and who are

---

[1]The regulation reads:
"*Section 6.7 Physical Standards*
"A. Height:
"Each applicant for deputy sheriff must be at least 5' 9" in height and weight must be in proportion to height in accordance with LEFF standards." County of Cowlitz, Rules for the Civil Service Commission of the Sheriff's Office, 10 (1976).

less than 5 feet 9 inches in height. For reasons not made clear by the record, respondent Fahn was permitted to take the examination for deputy sheriff. However, he was subsequently removed from the eligibility list because he could not meet the height requirement. Parkhill was not permitted to sit for the examination.

Respondents then brought an action for declaratory judgment that the height regulation constituted a violation of RCW 49.60.180 and WAC 162–12–140(3)(g).[2] They also sought a writ of mandamus ordering appellant to (1) cease

---

[2]RCW 49.60.180 provides, in pertinent part:

"It is an unfair practice for any employer:

" . . .

"(4) To print, or circulate, or cause to be printed or circulated any statement, advertisement, or publication, or to use any form of application for employment, or to make any inquiry in connection with prospective employment, which expresses any limitation, specification, or discrimination as to age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap, or any intent to make any such limitation, specification, or discrimination, unless based upon a bona fide occupational qualification: *Provided*, Nothing contained herein shall prohibit advertising in a foreign language."

WAC 162–12–140(3)(g) provides:

"(3) The examples in the following chart of fair and unfair preemployment inquiries are intended to define what is an unfair practice under RCW 49.60-.180(4) and RCW 49.60.200 and to have the force of law where they apply. These examples are not exhaustive, however. The statutes prohibit all preemployment inquiries which unnecessarily reveal race, sex, or membership in other protected classes, whether or not the particular inquiry is covered in this regulation.

| SUBJECT | FAIR PREEMPLOYMENT INQUIRIES | UNFAIR PREEMPLOYMENT INQUIRIES |
|---|---|---|
| " . . . | | |
| g. Height and Weight | Inquiries as to ability to perform actual job requirements. Being of a certain height or weight will not be considered to be a job requirement unless the employer can show that no employee with the ineligible height or weight could do the work. | Any inquiry which is not based on actual job requirements." |

enforcement of its height requirement, (2) restore respondent Fahn to his place on the eligibility list, and (3) permit respondent Parkhill to sit for the next scheduled examination. Finally, they sought damages, including lost wages in the amount respondents would have earned but for the allegedly void height regulation, and attorney fees.

Appellant asserted in its answer that the height minimum was a valid job requirement, that Fahn and Parkhill were not members of a protected minority, and that WAC 162–12–140(3)(g) was void because it exceeded the rule-making authority granted to the Human Rights Commission by the antidiscrimination statute, RCW 49.60. Thereafter, the Human Rights Commission intervened by filing a complaint seeking among other relief a declaratory judgment that WAC 162–12–140(3)(g) was valid as adopted.

Upon motions by respondents and the Human Rights Commission, the trial court granted summary judgment. The judgment was based on the conclusion that WAC 162–12–140(3)(g) constituted Washington law on employment standards regarding height and weight. Moreover, the court found on stipulation of counsel that three persons under 5 feet 9 inches tall were employed as deputy sheriffs in Cowlitz County at the time of judgment and that they had performed and were performing their duties satisfactorily. Since appellant could not prove consistently with the stipulations that no person under the height requirement could do the work, the court found it had violated the regulation as a matter of law.

At a subsequent hearing, the court awarded damages of $1,043.50 to Fahn. Parkhill could not show damages and did not claim them. The court also awarded $2,500 in attorney fees, plus costs, to respondents and ordered appellant to restore Fahn to his place on the eligibility list and to permit Parkhill to sit for the next Civil Service examination.

I

Since we are reviewing an order of summary judg-

ment, we must make the same inquiry as the trial court made. *Sarruf v. Miller,* 90 Wn.2d 880, 883, 586 P.2d 466 (1978); *Highline School Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). We must decide whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Sarruf,* at 883. *Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 152, 570 P.2d 438 (1977).

In this action brought under RCW 49.60.180(4) and WAC 162–12–140(3)(g), the only facts material to respondents' claim were their height, the presence on the sheriff's force of three deputies under 5 feet 9 inches in height, and appellant's admitted inability to show that no one under 5 feet 9 inches could perform the duties of the job. All of these facts were undisputed, and the trial court correctly concluded that no genuine issue existed as to any material fact. Nonetheless, we cannot uphold the summary judgment unless we find that the facts require it as a matter of law. *Sarruf,* at 883.

The validity of WAC 162–12–140(3)(g), on which the judgment was based, is at the heart of the dispute between these parties. Appellant Civil Service Commission challenges the authority of the Washington State Human Rights Commission to promulgate the regulation, which declares that a preemployment inquiry regarding height and weight is an unfair practice under RCW 49.60.180(4) unless the inquiry is based on actual job requirements. Moreover, a certain height or weight cannot be considered a job requirement unless the employer can show that *no* employee with the ineligible height or weight could do the job.

The questions we face then are: whether the legislature intended to grant to the Human Rights Commission the authority to determine that a preemployment inquiry regarding height and weight is an unfair employment practice under RCW 49.60.180(4); and, if so, whether the present regulation makes that determination in an acceptable manner.

A

██ ██ It is well settled that an administrative agency is limited to the powers and authority granted to it by the legislature. *Washington Water Power Co. v. State Human Rights Comm'n*, 91 Wn.2d 62, 65, 586 P.2d 1149 (1978); *Cole v. State Util. & Transp. Comm'n*, 79 Wn.2d 302, 485 P.2d 71 (1971). The legislature may, however, delegate to an administrative agency the power to determine a fact or state of things upon which application of the law is made to depend, provided the law enunciates standards which may guide the administrative officers or board. *Washington Water Power Co.*, at 65–66; *O'Connell v. Conte*, 76 Wn.2d 280, 285, 456 P.2d 317 (1969). Moreover, we have frequently declared that administrative rules adopted pursuant to a legislative grant of authority are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the statute being implemented. *Washington Water Power Co.*, at 68; *Weyerhaeuser Co. v. Department of Ecology*, 86 Wn.2d 310, 314, 545 P.2d 5 (1976).

In determining the nature of the authority delegated to the Human Rights Commission, we must first examine the purposes for which the law against discrimination was enacted. The statement of purpose, RCW 49.60.010, declares that discrimination because of "race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap" is a matter of state concern. Accordingly, a state agency, the Human Rights Commission, has been established "with powers with respect to elimination and prevention of discrimination in employment . . ." and given "general jurisdiction and power" for those purposes. RCW 49.60.010. The legislature has further directed that the provisions of the law against discrimination are to be construed liberally to accomplish the purposes of the act. RCW 49.60.020.

There is little doubt that the Human Rights Commission may prohibit preemployment inquiries which specifically discriminate against one of the protected categories set

forth in RCW 49.60.180(4). The language of the statute expressly prohibits such inquiries, and the parties do not dispute that preemployment inquiries relating to race, age, sex, and other enumerated categories may be validly prohibited. *See* WAC 162–12–140(3)(a), (f), (h), (k), (o), (q), and (s). Moreover, our decisions interpreting RCW 49.60- .180(4) make it clear that employers may not discriminate against potential employees based on the factors enumerated in the statute. *Washington Water Power Co.*, at 69; *Sarruf*, at 884; *Stieler v. Spokane School Dist. 81*, 88 Wn.2d 68, 558 P.2d 198 (1977). *See also Barnes v. Washington Natural Gas Co.*, 22 Wn. App. 576, 591 P.2d 461 (1979); *Davis v. Department of Labor & Indus.*, 22 Wn. App. 487, 589 P.2d 831 (1979); *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 573 P.2d 389 (1978); *Albertson's, Inc. v. State Human Rights Comm'n*, 14 Wn. App. 697, 544 P.2d 98 (1976). However, the question in this case concerns the Human Rights Commission's authority to declare unfair those inquiries which, although neutral on their face, may have a disparate impact on a group or groups protected by the statute.

We note at the outset that there are no Washington cases on the disparate impact of facially neutral employment standards on protected classes. This has been an active area in the federal courts, however, where frequent litigation has arisen under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2 (1976).[3] *See, e.g., Dothard v. Rawlinson*, 433 U.S. 321, 53 L. Ed. 2d 786, 97 S.

---

[3]The employment discrimination provisions of the federal law read, in pertinent part, as follows:

"(a) . . .

"It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an

Ct. 2720 (1977); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 45 L. Ed. 2d 280, 95 S. Ct. 2362 (1975); *Griggs v. Duke Power Co.,* 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971); *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 581–85, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978) (Marshall, J., concurring in part and dissenting in part); *Vanguard Justice Soc'y, Inc. v. Hughes,* 471 F. Supp. 670 (D. Md. 1979), and cases cited therein. Moreover, Congress has expressed an intent that Title VII be construed broadly. *Griggs.* Since our legislature has likewise mandated a liberal construction for RCW 49.60, we may look to the relevant federal cases for aid in analyzing the power delegated to the rule–making agency.

■ The virtually unanimous view of the federal courts is that facially neutral height requirements have a disproportionately unfavorable impact on certain protected classes, especially women and some minority groups such as Mexican–Americans. *Rawlinson; Blake v. Los Angeles,* 595 F.2d 1367 (9th Cir. 1979), *cert. denied,* 446 U.S. 928, 64 L. Ed. 2d 281, 100 S. Ct. 1865 (1980); *Davis v. County of Los Angeles,* 566 F.2d 1334, 1341–42 (9th Cir. 1977), *vacated on other grounds,* 440 U.S. 625, 59 L. Ed. 2d 642, 99 S. Ct. 1379 (1979); *United States v. Buffalo,* 457 F. Supp. 612 (W.D.N.Y. 1978); *Mieth v. Dothard,* 418 F. Supp. 1169 (M.D. Ala. 1976) (3–judge court), *aff'd in part and reversed in part on other grounds sub nom. Dothard v. Rawlinson,* 433 U.S. 321, 53 L. Ed. 2d 786, 97 S. Ct. 2720 (1977); *League of United Latin American Citizens v. Santa Ana,* 410 F. Supp. 873 (C.D. Cal. 1976); *Officers for Justice v. Civil Serv. Comm'n,* 395 F. Supp. 378 (N.D. Cal. 1975). Moreover, the Equal Employment Opportunity Commission has said it will look with "particular concern" at height and weight standards which tend to deny equal opportunity to certain groups which because of national origin tend to

employee, because of such individual's race, color, religion, sex, or national origin."
42 U.S.C. § 2000e–2(a) (1976).

fall outside national norms for height and weight. 29 C.F.R. § 1606.1(b) (1978).

There is thus ample authority establishing the probability that height standards have a disparate impact on certain groups. In keeping with the broad directive from the legislature to the Human Rights Commission, therefore, we believe it is well within the agency's authority to determine that a preemployment inquiry with respect to height and weight, when not related to job requirements, is an unfair employment practice because of its unfavorable impact on some classes of persons protected by the statute.

B

This conclusion does not entirely dispose of the matter, however. Appellant contends that the standard for showing a job requirement places an unreasonably high burden on employers and in fact renders meaningless that portion of the provision which allows a height or weight inquiry when related to a job requirement. WAC 162-12-140(3)(g).

It bears repeating that the regulation, in addition to declaring unfair a height inquiry which is unrelated to job requirements, also provides that height *cannot* constitute a job requirement unless the employer can show that *no* employee with the ineligible height could perform the job. WAC 162-12-140(3)(g). Since appellant by stipulation could not make such a showing, it was precluded from putting on any proof that the height requirement constituted a valid job requirement. On the other hand, respondents were not required to make any showing of disproportionate impact on protected classes, since this fact is presumed in the regulation. Respondents therefore rested after proving (1) appellant's height requirement, (2) the WAC regulation prohibiting preemployment inquiries as to height and weight, and (3) that respondents were under 5 feet 9 inches.

We agree with appellant that the regulation has the effect of preventing an employer under circumstances similar to those in the present case from ever being permitted

to present evidence of job relatedness. Appellant was prevented from putting on proof because it employed three deputies under the height minimum and thus in effect was forced to stipulate itself into a summary judgment. But even if appellant had employed no persons under 5 feet 9 inches as deputy sheriffs, common sense tells us that at least *one* person of unusual physical capabilities could be found somewhere and shown capable of performing the job. Thus, even if an employer were able to resist a motion for summary judgment, the burden imposed on him by the regulation to show job relatedness is so stringent that it provides in fact no realistic opportunity to demonstrate how the requirement is related to the job. Whether the Human Rights Commission is empowered to foreclose an employer from showing job relatedness is thus the second, and more difficult, of the two challenges to the validity of this regulation.

In analyzing this portion of the regulation, we again find it helpful to turn to federal law, as we have done in other cases interpreting RCW 49.60. *See Stieler*, at 73; *Ellingson*, at 54 n.5; and *Albertson's, Inc.*, at 701.

Discrimination cases brought under Title VII may take one of two forms, either "disparate impact," or "disparate treatment" (also called overt discrimination). *See especially International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n.15, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977). *See generally* S. Agid, *Fair Employment Litigation: Proving and Defending a Title VII Case* 527–34 (2d ed. 1979). These two forms have been contrasted as follows:

> "Disparate treatment" . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. See, *e.g.*, *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U. S. 252, 265–266 [50 L. Ed. 2d

450, 97 S. Ct. 555 (1977)]. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII. . . .

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. [*See Rawlinson; Albemarle Paper Co.;* and *Griggs.*] Proof of discriminatory motive, we have held, is not required under a disparate impact theory. Compare, *e.g., Griggs v. Duke Power Co.,* 401 U. S. 424, 430–432, with *McDonnell Douglas Corp. v. Green,* 411 U. S. 792, 802–806 [36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)].

*International Bhd. of Teamsters,* at 335–36 n.15; *see also Furnco Constr. Corp.,* at 581–83 (Marshall, J., concurring in part and dissenting in part).

The federal disparate treatment cases reveal that the employer may raise the defense that the otherwise prohibited discrimination is a bona fide occupational qualification (BFOQ), which is "reasonably necessary to the normal operation of that particular business or enterprise . . ." 42 U.S.C. 2000e–2(e)(1) (1976). The BFOQ exception has been the subject of extensive litigation in the federal courts. *See, e.g., Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385 (5th Cir.), *cert. denied,* 404 U.S. 950, 30 L. Ed. 2d 267, 92 S. Ct. 275 (1971); *Weeks v. Southern Bell Tel. & Tel. Co.,* 408 F.2d 228 (5th Cir. 1969); *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv. L. Rev. 1109, 1176–78 (1971); Note, *Height Standards in Police Employment and the Question of Sex Discrimination: The Availability of Two Defenses for a Neutral Employment Policy Found Discriminatory Under Title VII,* 47 S. Cal. L. Rev. 585, 622–26 (1974).

The BFOQ defense is available only in cases of disparate treatment. *Dothard v. Rawlinson,* 433 U.S. 321, 332–33, 53 L. Ed. 2d 786, 97 S. Ct. 2720 (1977); *Diaz,* at 387; 42 U.S.C. 2000e–2(e)(1) (1976). In disparate impact cases, the federal

courts have developed a "business necessity" defense, requiring employers to show that a challenged practice is related to job performance:

> The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited.
>
> . . .
>
> . . . Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question.

*Griggs v. Duke Power Co.*, 401 U.S. 424, 431–32, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971).

The United States Supreme Court has established a method for the allocation of the burden of proof in cases involving the business necessity defense to a claim of disparate impact. First, it is initially incumbent on the plaintiff to make out a prima facie case of discrimination, *i.e.,* to show that the practice in question selects applicants in a way that significantly discriminates against a protected class. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 45 L. Ed. 2d 280, 95 S. Ct. 2362 (1975). Once the plaintiff makes the required showing, the burden shifts to the employer to show that the challenged requirement has a "manifest relationship" to the position in question. *Griggs,* at 432; *Rawlinson,* at 329. Finally, if the employer does prove that the requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect will "serve the employer's legitimate interest in 'efficient and trustworthy workmanship.'" *Albemarle Paper Co.,* at 425, quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

In determining what is business necessity in such cases, federal courts have created varying standards, ranging from reasonably light to very stringent burdens on employers. *See Griggs,* at 432 (the requirement must merely have a "manifest relationship" to the employment in question);

*Robinson v. Lorillard Corp.*, 444 F.2d 791, 798 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 30 L. Ed. 2d 655, 92 S. Ct. 573 (1971) (the practice must be "necessary to the safe and efficient operation of the business"); *United States v. Bethlehem Steel Corp.*, 446 F.2d 652, 662 (2d Cir. 1971); *United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 451 (5th Cir. 1971) (the practice must not only promote safety and efficiency, but also be *essential* to the business); *Johnson v. Pike Corp. of America*, 332 F. Supp. 490, 495 (C.D. Cal. 1971) (not only must the practice be essential to the business, but also the court will not consider "arguments regarding inconvenience, annoyance or even expense to the employer").

Our review of the federal cases discloses that regardless of whether the claim is one of disparate treatment or disparate impact, the courts always allow the employer some opportunity to show the necessity for the discriminatory practice. *Rawlinson,* at 329, 333; *Griggs,* at 431–32. It is evident that such an opportunity is required because employers have legitimate interests in "efficient and trustworthy workmanship" which must be served. *McDonnell Douglas Corp.,* at 801; *Albemarle Paper Co.,* at 425. As the United States Supreme Court explained in *Griggs,* at pages 430–31:

> Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. . . . What is required by Congress is the removal of *artificial, arbitrary,* and *unnecessary* barriers to employment . . .

(Italics ours.)

The test formulated by the Human Rights Commission in WAC 162–12–140(3)(g) (the employer must show that "no employee with the ineligible height or weight could do the work") most resembles that established by the 5th Circuit in *Weeks,* at 235, for a BFOQ based on sex (the

employer must prove that "all or substantially all" women would be unable to perform the job safely and efficiently). We observe, however, that the *Weeks* test is formulated so that even in a case where overt discrimination is conceded by the employer (*Weeks,* at 231), the employer is provided a realistic opportunity to attempt to show why the challenged practice is necessary to his business. Although the burden is great, it is conceivable that an employer could demonstrate that substantially all persons rendered ineligible by the practice could not perform the job.

■ No case or statute has been brought to our attention that imposes the logically impossible burden to show "all", as is required by the Human Rights Commission. *See Philadelphia v. Pennsylvania Human Relations Comm'n,* 7 Pa. Commw. Ct. 500, 300 A.2d 97 (1973). Nor have respondents advanced persuasive arguments that the statute allows for such a burden to be placed on employers. Although the law against discrimination lodges broad authority in the Human Rights Commission with respect to the "elimination and prevention of discrimination in employment" (RCW 49.60.010), we do not believe the legislature intended to permit the agency to entirely foreclose an employer's opportunity to demonstrate the basis for particular practices and requirements. Therefore, we find the regulation invalid.[4]

---

[4]While we have made an effort to distinguish between the BFOQ and business necessity defenses as they are discussed in the federal Title VII cases, we have also noted that the effect of each defense is the same: the burden is on the employer to show that the practice is necessary to the successful performance of the job. The Human Rights Commission does not appear to differentiate between what is required to show a BFOQ under RCW 49.60 and what is required to show a "job requirement." In either situation a practice is prohibited under the regulations unless the employer can show that *no one* rendered ineligible by the practice could do the job. WAC 162–16–020(3)(b); WAC 162–12–040(3)(g). Given the broad authority granted by the legislature to the agency and the difficulty of distinguishing between the two tests in terms of their practical effect, we cannot say the agency exceeded its delegated authority in choosing one standard, rather than two, by which an employer may defend against a charge of discrimination, provided, of course, that the single standard is within that authority.

■ We perceive, moreover, a second reason why the regulation in question, WAC 162–12–140(3)(g), is invalid. Since it prevents preemployment inquiries based on height and weight in virtually all situations, the regulation in effect establishes a new protected class composed of all persons who would be disadvantaged by a height or weight requirement. In our view, however, the designation of any additional categories of protected persons is clearly a legislative function.

As we have often held in the past, the power of an administrative agency to promulgate rules does not include the power to legislate. *Smith v. Greene,* 86 Wn.2d 363, 371, 545 P.2d 550 (1976). Administrative rules may not amend or change enactments of the legislature. *Kitsap–Mason Dairymen's Ass'n v. State Tax Comm'n,* 77 Wn.2d 812, 815, 467 P.2d 312 (1970).

In the law against discrimination, the legislature has established the categories of persons to be protected by the statute. RCW 49.60.010; RCW 49.60.180(4). The Human Rights Commission is charged with the elimination and prevention of discrimination based on the enumerated categories established by the legislature. RCW 49.60.010; RCW 49.60.030(1). But the agency's grant of authority cannot extend to permitting it to amend the statute by creating a new protected class. *Kitsap–Mason Dairymen's Ass'n,* at 815.

Accordingly, we hold that portion of WAC 162–12–140(3)(g) which defines the standard for establishing a job requirement for a preemployment inquiry relating to height or weight must at a minimum allow an employer access to a forum for showing the business necessity for such a requirement. Since, as we have shown, the regulation as promulgated forecloses the employer's opportunity to make its showing and impermissibly establishes an additional protected class, the rule for establishing job requirements

must fall. It follows that the trial court's order of summary judgment in favor of the respondents must be reversed.[5]

## II

The trial court awarded damages of $1,043.50 to respondent Fahn and attorney fees of $2,500 to both respondents. Since, as a result of our ruling, the case is not yet resolved, neither side may at this juncture recover any attorney fees. The same is true of the damage award to Fahn, and we therefore reverse the trial court's order awarding these sums.

■ Our disposition makes it unnecessary for us to address appellant's contention that statutory attorney fees are not recoverable to financially able plaintiffs absent an express agreement by them to pay the legal fees arising from the suit. Moreover, we need not consider the argument that WAC 162–12–140(3)(g) does not apply to the Civil Service Commission. This is "patently not correct," as the trial court found. RCW 49.60.040; WAC 162–22–070(4)(b). Finally, respondents sought to argue in this court that they are handicapped within the meaning of the statute, although they had not raised that issue below. We cannot, of course, decide such an issue for the first time on review and observe that respondents are fully entitled to advance it at trial.

---

[5]We recognize the effect of this ruling: if the case goes forward, the trial court will be required to permit appellant to put on its proof of job relatedness without any clear standards as to the burden of proof. In the interim before the Human Rights Commission has an opportunity to address this question through its rulemaking authority, the trial court should impose such a burden on the employer as is consistent with this opinion and with the legislature's mandate to prevent and eliminate discrimination through a liberal construction of the purposes of the law against discrimination. RCW 49.60.010; RCW 49.60.020.

We note parenthetically that whatever burdens are imposed, employers face a difficult task in persuading courts that height standards constitute a business necessity. *See, e.g., Dothard v. Rawlinson,* 433 U.S. 321, 331–32, 53 L. Ed. 2d 786, 97 S. Ct. 2720 (1977); *Blake v. Los Angeles,* 595 F.2d 1367, 1376 (9th Cir. 1979), *cert. denied,* 446 U.S. 928, 64 L. Ed. 2d 281, 100 S. Ct. 1865 (1980); *Vanguard Justice Soc'y v. Hughes,* 471 F. Supp. 670, 710–17 (D. Md. 1979); *United States v. Virginia,* 454 F. Supp. 1077, 1087–89 (E.D. Va. 1978).

The order of summary judgment and order awarding damages and attorney fees are reversed.

UTTER, C.J., and BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.

DOLLIVER, J. (dissenting)—The majority has taken a relatively simple and straightforward case and by its opinion has needlessly complicated the law. What were the facts before the trial court? Plaintiff Fahn, who took the examination for deputy sheriff, was removed from the eligibility list because he was under 5 feet 9 inches in height, while plaintiff Parkhill was not allowed to take the examination because he was under 5 feet 9 inches. In his deposition, the undersheriff of Cowlitz County stated there currently are three deputies who are under 5 feet 9 inches and that in no case is height an impediment to their ability to do the work. The undersheriff was not well acquainted with the work of Parkhill but stated that apart from the bar of the height requirement he would like to have Fahn as a deputy.

Only two questions need to be answered: (1) Are plaintiffs in a class protected by RCW 49.60.180?, and (2) If they are members of a protected class, is the requirement they be at least 5 feet 9 inches a bona fide occupational qualification? A subsidiary question is the validity of the regulation. WAC 162-12-140(3)(g).

## I

The majority contends at page 382–83:

> Since [the regulation of the State Human Rights Commission] prevents preemployment inquiries based on height and weight in virtually all situations, the regulation in effect establishes a new protected class composed of all persons who would be disadvantaged by a height or weight requirement. In our view, however, the designation of any additional categories of protected persons is clearly a legislative function.

There are two answers to this assertion, the first of which has been provided by the majority opinion.

1. In note 5, the majority states, "We note parenthetically that whatever burdens are imposed, employers face a difficult task in persuading courts that height standards constitute a business necessity." But if white, male, non-ethnic persons under 5 feet 9 inches, because of their sex, color and national origin cannot make a claim of "disparate treatment" (*see* majority opinion at pages 378–79), and if the "disparate impact" cases require a showing that "the practice in question selects applicants in a way that significantly discriminates against a protected class" (*see* majority opinion at pages 379–80), then the majority is simply stating in the text of its opinion that height is not a protected classification and in note 5 apparently assumes that it is. If height is a protected classification, plaintiffs should prevail and the case need go no further. If not, then it would be a cruel charade for the parties to heed the call of the majority and to take the case forward. While plaintiffs would have standing to attack the alleged discrimination and assert the interests of a protected class (*see Waters v. Heublein, Inc.,* 547 F.2d 466 (9th Cir. 1976)), this will not convert plaintiffs into a member of a protected class. As is demonstrated below, I believe the view of the majority in note 5 is correct.

2. In *Chicago, Milwaukee, St. P., & Pac. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 805, 557 P.2d 307 (1976), we said:

> A person with a handicap does not enjoy, in some manner, the full and normal use of his sensory, mental, or physical faculties. A "handicap" is: ". . . a disadvantage that makes achievement unusually difficult; *esp*: a physical disability that limits the capacity to work."

Thus, while a person who has a "physical handicap" would be in a protected class, taken alone *Milwaukee* would seem to bar mere height as being a protected classification.

In interpreting the law against discrimination, RCW 49.60, we have said:

> Reading this chapter as a whole, it is apparent that the legislature intended to give to the commission broad

powers to investigate and formulate policies with respect to practices which involve discrimination based upon those attributes, conditions, and situations which ·it had found to constitute an unfair basis for such discrimination.

*Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 67–68, 586 P.2d 1149 (1978).

The Court of Appeals in *Barnes v. Washington Natural Gas Co.,* 22 Wn. App. 576, 583, 591 P.2d 461 (1979), added, I believe correctly, a further dimension to the issue of defining "handicap". It said:

Public policy, expressed by the Act to eliminate and prevent discrimination in employment requires protecting from discriminatory practices both those perceived to be handicapped as well as those who are handicapped.

While shortness of stature is not, on its face, a physical handicap and thus shorter persons who do not qualify by either "disparate impact" or "disparate treatment" are not per se in a protected class, if the height of an employee or an applicant for employment is perceived by the employer to be a physical handicap, then, by action of the employer, the plaintiffs are in a protected class. If height in the view of the employer becomes "a disadvantage that makes achievement unusually difficult" and "a physical disability that limits the capacity to work" (*Milwaukee,* at 805)— clearly the position of the defendants here—then height is a protected classification and the questioning of prospective employees as to their height can be made only if it is based on a bona fide occupational qualification. RCW 49.60.180.

The legislature has declared the law against discrimination should be construed liberally so as to prevent and eliminate discrimination in employment. RCW 49.60.010– .030. Defendant is unquestionably discriminating against plaintiffs solely because of their height. Under the facts of this case, plaintiffs are members of a class which should receive the protection of the statute.

## II

Once it has been determined plaintiffs are members of a protected class, the only remaining question is whether defendant, who is discriminating against plaintiffs, is doing so on a bona fide occupational qualification.

The majority contends the language of WAC 162–12–140(3)(g) is too stringent in that "it provides in fact no realistic opportunity to demonstrate how the requirement [of height] is related to the job" and that "the regulation [WAC 162–12–140(3)(g)] has the effect of preventing an employer under circumstances similar to those in the present case from ever being permitted to present evidence of job relatedness". This is simply not so. The problem of defendant is not that it is barred from demonstrating the validity of the height requirement; rather it is that the sheriff already has three deputies under 5 feet 9 inches and thus cannot submit evidence that the height of 5 feet 9 inches is job related.

The majority further asserts "common sense tells us that at least *one* person [under 5 feet 9 inches] of unusual physical capabilities could be found somewhere and shown capable of performing the job". But if this is so, and somewhere this superperson is lurking, it simply proves the point: height is not a bona fide occupational qualification. If an employer wants to prevent persons from being hired because they fail to meet a single physical standard, it must show that such a standard is crucial to the job; it is a bona fide occupational qualification; and no one who suffers from the disability could perform the job. This should not be too difficult if the claimed disability is real. Even if credence is given to the superperson argument of defendant, one's credulity is strained to believe not just one but three such individuals showed up in Cowlitz County and were hired as deputy sheriffs.

If the sheriff's department hired deputies only 5 feet 9 inches or over, defendant could easily present its case for job relatedness. For example, in this case, the defendant summarized affidavits from law enforcement officers which

it claims "indicated [their] . . . concern for safe and effective law enforcement and demonstrated the need for a height requirement". This argument, which sounds fine on paper, tends to turn to ashes upon the disclosure it is not accepted even by the agency which promotes it. It escapes me how the Cowlitz County sheriff can claim the height of 5 feet 9 inches for its deputies is a bona fide occupational qualification when it admits three of its deputies are under 5 feet 9 inches and are satisfactory employees whose failure to stand 5 feet 9 inches is no impediment to the performance of their duties.

Finally, and I believe conclusively, even though WAC 162–12–140(3)(g) is stringent, it is entirely consistent with the statute. The statute in question (RCW 49.60.180(4)) reads in full:

> It is an unfair practice for any employer:
>
> . . .
>
> (4) To print, or circulate, or cause to be printed or circulated *any* statement, advertisement, or publication, or to use *any* form of application for employment, or to make *any* inquiry in connection with prospective employment, which expresses *any* limitation, specification, or discrimination as to age, sex, marital status, race, creed, color, national origin, or the presence of *any* sensory, mental, or physical handicap, or *any* intent to make *any* such limitation, specification, or discrimination, unless based upon a bona fide occupational qualification: *Provided,* Nothing contained herein shall prohibit advertising in a foreign language.

(Italics mine.) By the terms of the statute, an employer cannot make any inquiry as to a physical handicap (height) unless the handicap, and the handicap alone, is shown to be a bona fide occupational qualification. The statute is no less stringent than WAC 162–12–140(3)(g).

As I read the majority, although it appears to be saying that if plaintiffs start over again they will prevail, it apparently feels there must be a reversal because of its analysis of this case and the applicable law. This is unnecessary. The plaintiffs are covered by the statute; the regulation is

valid; there is no need for a new trial. I would affirm the trial court.

ROSELLINI and WRIGHT, JJ., and RYAN, J. Pro Tem., concur with DOLLIVER, J.