THE STATE EX REL. COLUMBUS SOUTHERN POWER COMPANY *v.* FAIS, JUDGE.

[Cite as *State ex rel. Columbus S. Power Co. v.
Fais,* 117 Ohio St.3d 340, 2008-Ohio-849.]

(No. 2007–1382—Submitted January 8, 2008—Decided March 5, 2008.)

**Per Curiam.**

{¶ 1} This is an original action for a writ of prohibition to prevent a common pleas court judge from proceeding in a declaratory-judgment case involving a public utility's liability for the cost of relocating overhead electrical lines underground when the relocation has been ordered by a municipality. We conclude that in this case, the issue of liability for these costs has been addressed and resolved by the Public Utilities Commission in a tariff, over which the commission has exclusive original jurisdiction. We therefore grant the writ.

### Commission–Approved Tariff

{¶ 2} Relator, Columbus Southern Power Company, is a public utility under R.C. 4905.02. See also R.C. 4905.03(A)(4). The Public Utilities Commission approved a tariff for Columbus Southern Power that requires municipalities and other public authorities to pay the cost of requiring public utilities to relocate overhead lines to the underground:

{¶ 3} "The Company shall not be required to construct general distribution lines underground unless the cost of such special construction for general distribution lines and/or the cost of any change of existing overhead general distribution lines to underground which is required or specified by a municipality or other public authority (to the extent that such cost exceeds the cost of construction of the Company's standard facilities) shall be paid for by that municipality or public authority."

{¶ 4} This provision is listed under a general heading of "Terms and Conditions of Service" and a more specific subheading of "Temporary and Special Service."

{¶ 5} The commission originally approved the tariff in 1992 as part of the Columbus Southern rate case, *In the Matter of the Application of Columbus*

*Southern Power Company for Authority to Amend its Filed Tariffs to Increase the Rates and Charges for Electric Service,* PUCO No. 91–418–EL–AIR, 1992 WL 281188. In that case, a witness for Columbus Southern testified that unless the municipality that required the installation of underground electrical service paid the additional cost of that construction, all of the company's customers—including those living outside the municipality—would be paying the increased cost:

{¶ 6} "The Company has added language [to the proposed tariff] that will require a municipality that requires the installation of underground electric service to pay the additional cost of such construction. Underground construction is considerably more costly than overhead construction. When a customer requests that service lines be installed underground, the customer is required to pay the cost difference. If a municipality requires the Company to install the general distribution lines underground, the cost difference needs to be paid by the municipality. Otherwise, all of the Company's customers, including those outside the municipality, will have to pay more because of this increased cost. * * * This could mean that a customer in one city would be paying more because some other city requires underground construction."

{¶ 7} The commission's staff agreed with Columbus Southern's proposed revision because "the additional cost to provide underground service to one municipality should not be borne by ratepayers in another municipality." The commission approved the provision.

Reynoldsburg: Ordinance, Relocation Order, and Payment of Relocation Costs

{¶ 8} On May 9, 2005, the Reynoldsburg City Council enacted a "Comprehensive Right of Way Management Policy Ordinance" that authorized the city's public-service director to designate portions of its rights of way as being suitable for underground utility facilities and to require a permittee to relocate its facilities underground at the permittee's "sole cost." Reynoldsburg City Code 907.06(A)(4).

{¶ 9} In July 2005, Reynoldsburg Safety/Service Director Sharon L. Reichard notified Columbus Southern that it would be ordered to relocate its facilities "within the public right of way of the [Reynoldsburg Major Commercial Corridor] Project into the underground duct bank." The city declared that the portion of the public right of way within the construction project "shall accommodate only utility facilities located underground."

{¶ 10} In November 2005, Reynoldsburg agreed to pay in advance the estimated cost of Columbus Southern's facility relocation—in an amount not to exceed $1,185,535.30—and the parties agreed that the dispute over the ordinance's "sole cost" provision would be resolved in an appropriate forum.

### Declaratory-Judgment Case

{¶ 11} In July 2006, Reynoldsburg filed a complaint for declaratory relief in the Franklin County Court of Common Pleas. Reynoldsburg requested a declaration that Columbus Southern had a legal obligation to relocate its facilities at its own cost and that the city is entitled to reimbursement of the cost incurred under the parties' agreement. Columbus Southern filed a motion to dismiss the case for lack of subject-matter jurisdiction, contending that the Public Utilities Commission has exclusive jurisdiction over this matter.

{¶ 12} Respondent, Judge David W. Fais, denied Columbus Southern's motion. Judge Fais determined that although the commission has exclusive jurisdiction over challenges to rates, services, and public-way fees, the relocation costs were not such rates, services, or fees. Judge Fais concluded that "[b]ecause this Court does not find that the portion of [Columbus Southern]'s tariff that addresses the relocation costs is a 'rate' or 'charge,' the Court finds that the dispute in the instant case over which entity is responsible for the relocation charges is properly before the Court and within its basic jurisdiction."

### Prohibition Case

{¶ 13} In July 2007, Columbus Southern filed this action for a writ of prohibition to prevent Judge Fais from further proceeding in the declaratory-judgment action. Judge Fais filed a motion to dismiss. Reynoldsburg filed a motion to intervene, an answer, and a motion for judgment on the pleadings. Columbus Southern filed a memorandum in opposition. On October 24, we granted an alternative writ. The parties responded with evidence and briefs.

{¶ 14} This cause is now before the court for our S.Ct.Prac.R. X(5) determination.

### Prohibition Claim

{¶ 15} To be entitled to the requested writ of prohibition, Columbus Southern must establish that (1) Judge Fais is about to exercise judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Westlake v. Corrigan,* 112 Ohio St.3d 463, 2007-Ohio-375, 860 N.E.2d 1017, ¶ 12. Judge Fais has exercised and continues to exercise judicial authority by proceeding in the declaratory-judgment case filed by Reynoldsburg.

{¶ 16} For the remaining requirements, "[i]f a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition * * * will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Mayer v. Henson,* 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 12; see also *State*

*ex rel. Russo v. McDonnell,* 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 22. "In cases of a patent and unambiguous lack of jurisdiction, the requirement of a lack of an adequate remedy of law need not be proven because the availability of alternate remedies like appeal would be immaterial." *State ex rel. State v. Lewis,* 99 Ohio St.3d 97, 2003-Ohio-2476, 789 N.E.2d 195, ¶ 18.

{¶ 17} For the following reasons, Columbus Southern has established that Judge Fais patently and unambiguously lacks jurisdiction to proceed in the declaratory-judgment case.

{¶ 18} "The General Assembly has created a broad and comprehensive statutory scheme for regulating the business activities of public utilities. R.C. Title 49 sets forth a detailed statutory framework for the regulation of utility service and the fixation of rates charged by public utilities to their customers. As part of that scheme, the legislature created the Public Utilities Commission and empowered it with broad authority to administer and enforce the provisions of Title 49. The commission may fix, amend, alter or suspend rates charged by public utilities to their customers. R.C. 4909.15 and 4909.16. Every public utility in Ohio is required to file, for commission review and approval, tariff schedules that detail rates, charges and classifications for every service offered. R.C. 4905.30. And a utility must charge rates that are in accordance with tariffs approved by, and on file with, the commission. R.C. 4905.22." *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 150, 573 N.E.2d 655.

{¶ 19} Moreover, " '[t]he commission has exclusive jurisdiction over various matters involving public utilities, such as rates and charges, classifications, and service, effectively denying to all Ohio courts (except this court) any jurisdiction over such matters.' " *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas,* 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶ 18, quoting *State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas* (2000), 88 Ohio St.3d 447, 450, 727 N.E.2d 900. The commission's jurisdiction comes from statutory authorization. See *Time Warner AxS v. Pub. Util. Comm.* (1996), 75 Ohio St.3d 229, 234, 661 N.E.2d 1097.

{¶ 20} Judge Fais found incorrectly that the issue of the payment of the costs to relocate overhead electrical lines in a Reynoldsburg right of way to the underground did not involve rates, charges, or any service. These costs are included in the rates and charges for services broadly defined in the pertinent statutes that are within the exclusive jurisdiction of the commission. R.C. 4905.22 provides, "All charges made or demanded for any service rendered, or to be rendered, shall be just, reasonable, and not more than the charges allowed by law or by order of the public utilities commission, and no unjust or unreasonable charge shall be made or demanded for, or in connection with, any service, or in excess of that allowed by law or by order of the commission." R.C. 4905.26

allows "any person, firm, or corporation" to file a complaint with the commission against any public utility for any "rate" or "charge" that "is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law." R.C. 4905.22 and 4905.26 vest the commission with exclusive initial jurisdiction over the matters specified therein. See, e.g., *State ex rel. Columbia Gas of Ohio, Inc. v. Henson*, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, ¶ 16; *Illum. Co.*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶ 18; *Cleveland Elec. Illum. Co.*, 88 Ohio St.3d at 450–451, 727 N.E.2d 900.

{¶ 21} "In construing these statutes, 'our paramount concern is the legislative intent in enacting the statute[s].'" *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 35, quoting *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. "Determining this intent requires us to read words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11. A "charge" is a "[p]rice, cost, or expense" and a "rate" is "[a]n amount paid or charged for a good or service." Black's Law Dictionary (8th Ed.2004) 248 and 1289. A "service" is "[a]n intangible commodity in the form of human effort, such as labor, skill, or advice." Id. at 1399.

{¶ 22} Applying rules of grammar and common usage to R.C. 4905.22 and 4905.26, we conclude that Columbus Southern's compliance with the commission-approved tariff and its refusal to adhere to the conflicting Reynoldsburg ordinance and directive to pay the costs associated with the ordered relocation of its facilities resulted in a charge or rate to Reynoldsburg for the service of relocating the facilities. The tariff specifies an at-cost price to be charged to any municipality requiring that Columbus Southern use its labor and skill to relocate existing overhead general distribution lines underground.

{¶ 23} The city, which is a municipal corporation, claims, in effect, that Columbus Southern's charge is "in excess of that allowed by law," i.e., the city's right-of-way ordinance. Because the city claims a violation of R.C. 4905.22, it should raise that claim by way of a complaint to the commission in accordance with R.C. 4905.26. Even if Columbus Southern had paid these relocation costs, the commission would have had exclusive, initial jurisdiction over any application by the utility to recover these costs. R.C. 4939.07(D).

{¶ 24} These relocation costs will affect the rates of either all Columbus Southern customers (if the utility is ordered to pay the costs) or those customers living in Reynoldsburg (if the city cannot recover its payment of the costs). In fact, the commission-approved tariff that Columbus Southern relies upon to claim that Reynoldsburg is liable for the relocation costs emanated from a commission *rate case*, and the relocation provision at issue is listed in the section in the tariff

entitled "Temporary and Special *Service*." (Emphasis added.) Because the plain, unambiguous language of these statutes encompasses this dispute, we must apply the statutes as written. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 11.

{¶ 25} Furthermore, in its declaratory-judgment action, Reynoldsburg, in effect, requests the common pleas court to declare invalid the commission-approved tariff absolving Columbus Southern from liability for the increased costs of relocating electrical lines underground as required by a municipality or other public authority. But only this court is authorized to review the commission's order approving the challenged provision:

{¶ 26} "No court other than the supreme court shall have the power to review, suspend, or delay any order made by the public utilities commission, or enjoin, restrain, or interfere with the commission or any public utilities commissioner in the performance of official duties. A writ of mandamus shall not be issued against the commission or any commissioner by any court other than the supreme court." R.C. 4903.12.

{¶ 27} As we held in *State ex rel. N. Ohio Tel. Co. v. Winter* (1970), 23 Ohio St.2d 6, 9–10, 52 O.O.2d 29, 260 N.E.2d 827, "[o]nly [the Supreme Court of Ohio] has the power to review, suspend, delay, or restrain orders of the commission." Consequently, "[a]n injunction issued by a Court of Common Pleas, which enjoins a public utility from following tariffs filed with and approved by the Public Utilities Commission, amounts to a review, suspension and delay of orders of the commission, and is a usurpation of authority." Id. at paragraph two of the syllabus.

{¶ 28} " '[I]t is readily apparent that *the General Assembly has provided for commission oversight of filed tariffs*, including the right to adjudicate complaints involving customer rates and services.' " (Emphasis added.) *Hull v. Columbia Gas of Ohio*, 110 Ohio St.3d 96, 2006-Ohio-3666, 850 N.E.2d 1190, ¶ 20, quoting *Kazmaier*, 61 Ohio St.3d at 151, 573 N.E.2d 655. "Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, the commission that contain schedules of rates and charges, rules and regulations, and standards for service." *Migden–Ostrander v. Pub. Util. Comm.*, 102 Ohio St.3d 451, 2004-Ohio-3924, 812 N.E.2d 955, ¶ 8, fn. 5. Because Reynoldsburg's ordinance is in direct contravention of a previously existing, duly adopted tariff, which was approved by the commission following notice, hearing, and the intervention of other municipalities, the commission has the exclusive, initial jurisdiction over the city's claim, and we have jurisdiction over any appeal from the commission's final order. *Hull*, 110 Ohio St.3d 96, 2006-Ohio-3666, 850 N.E.2d 1190, ¶ 40–41.

{¶ 29} Judge Fais's reliance on *Ashland v. Ohio Edison Co.* (July 24, 1984), Ashland App. No. CA–811, 1984 WL 4970, and *Dayton Communications Corp. v. Pub. Util. Comm.* (1980), 64 Ohio St.2d 302, 18 O.O.3d 478, 414 N.E.2d 1051, does not alter this conclusion. Ashland involved a pure contract issue, and *Dayton Communications* addressed a property-ownership issue. This case involves neither a contractual nor a property-ownership issue. Cf. *New Bremen v. Pub. Util. Comm.* (1921), 103 Ohio St. 23, 30–31, 132 N.E. 162 (the Public Utilities Commission "has no power to * * * adjudicate controversies between parties as to contract rights or property rights"). Instead, this case involves whether Columbus Southern's attempted charge of relocation costs to Reynoldsburg, which was in accordance with the duly adopted commission tariff, is unlawful. Further, in *Dayton Communications*, it was the *commission* that exercised initial jurisdiction to determine whether it had jurisdiction over the competing claims of property ownership, one of which was based on a tariff.

{¶ 30} The city erroneously cites *State ex rel. Columbus S. Power Co. v. Sheward* (1992), 63 Ohio St.3d 78, 585 N.E.2d 380, to claim that any constitutional challenge to the right-of-way ordinance can be raised by a declaratory-judgment action in common pleas court. In that case, the plaintiffs sought a judgment declaring that a public-utilities statute was unconstitutional. We emphasized that the plaintiffs were not attempting to "interfere with the commission's ratemaking authority" and that a finding that the statute was unconstitutional "would impair no order or other authority of the commission." Id. at 80, 585 N.E.2d 380. By contrast, a finding that the Reynoldsburg ordinance here prevails over the tariff *would* impair the commission's order approving the tariff provision, which the commission made as part of a service provision in the context of a rate case.

{¶ 31} Finally, we have recognized that municipal home-rule issues may be resolved by this court in an appeal from an order of the commission. See, e.g., *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840; *Maumee v. Pub. Util. Comm.*, 101 Ohio St.3d 54, 2004-Ohio-7, 800 N.E.2d 1154.

{¶ 32} Based on the foregoing, the common pleas court patently and unambiguously lacks jurisdiction to consider the propriety of the utility's commission-approved tariff. The commission has the exclusive, original jurisdiction over this matter, subject to the ultimate review of this court. Therefore, we grant a writ of prohibition to prevent Judge Fais from proceeding in the underlying declaratory-judgment case.

Writ granted.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents and would deny the writ and dismiss the cause.

Steven T. Nourse and Marilyn McConnell, for relator.

Ron O'Brien, Franklin County Prosecuting Attorney, and Robert E. Williams and Tracie M. Boyd, Assistant Prosecuting Attorneys, for respondent Judge David W. Fais.

Chester, Willcox & Saxbe, L.L.P., John W. Bentine, and Gerhardt A. Gosnell II, for respondent city of Reynoldsburg.