## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CHESAPEAKE UTILITIES CORPORATION, | : <br> : C.A. No. K17A-01-001 WLW <br> : Kent County |
| Appellant, | : |
| | : |
| v. | : |
| | : |
| DELAWARE PUBLIC SERVICE COMMISSION, | : <br> : |
| | : |
| Appellee. | : |

Oral Argument: May 12, 2017
Decided: June 7, 2017

### ORDER

Upon Appeal from a Decision of the
Delaware Public Service Commission.
*Reversed and Vacated.*

William O'Brien, Esquire, Associate General Counsel for Chesapeake Utilities Corporation, Daniel O'Brien, Esquire, Venable LLP, Wilmington, Delaware, Brian M. Quinn, Esquire, *pro hac vice*, Venable LLP, Baltimore, Maryland; attorneys for Appellant Chesapeake Utilities Corporation.

Todd A. Coomes, Esquire and Selena E. Molina, Esquire of Richards Layton & Finger; Wilmington, Delaware; attorneys for Appellee Delaware Association of Alternative Energy Providers, Inc.

Brenda R. Mayrack, Esquire of the Department of Justice, Dover, Delaware; attorney for the Delaware Public Service Commission

WITHAM, R.J.

This appeal from the Delaware Public Service Commission requires the Court to resolve a single issue: may an unregulated competitor intervene to protect its interest in a regulated utility's rate proceeding?

Applicant-Below/Appellant Chesapeake Utilities Corporation ("Chesapeake") appeals from two orders that were part of a final determination of the Delaware Public Service Commission ("the Commission"). The first order grants the petition of Intervenor-Below/Appellee Delaware Association of Alternative Energy Providers, Inc. (DAAEP) to intervene. The second denies Chesapeake's petition for an interlocutory appeal and affirms the earlier order granting intervention.

This Court finds that the Commission exceeded its statutory authority when it granted DAAEP's petition to intervene in a public utility's rate case because the sole interest claimed by the intervenor was as an unregulated competitor to the public utility. The intervention orders of the hearing examiner and the Commission are thus reversed. Because the orders regarding intervention are reversed on that ground, the Court does not reach Chesapeake's second argument: that the Commission's determination was unsupported by substantial evidence.

## FACTS AND PROCEDURAL HISTORY

Chesapeake filed an application with the Commission in December 2015 for a general increase in its natural gas rates and other changes to its natural gas tariff.[1] The application sought to expand Chesapeake's natural gas offerings through new

---

[1] R. at 2.

programs.[2]

A few months later, in February 2016, DAAEP filed a petition for leave to intervene in the rate docket.[3] In its petition, DAAEP asserted interests based on (1) its prior interventions, (2) its participation in prior settlement agreements, and (3) the harm that would be done to DAAEP's members and their employees if Chesapeake were permitted to expand its service offerings.[4] It also identified issues it wished to explore if permitted to intervene.[5] Chesapeake opposed the intervention on the grounds that (1) DAAEP was not entitled to intervene to protect its own competitive interests, (2) it was already sufficiently represented by other parties, (3) its intervention did not serve the public interest, and (4) its participation in prior proceedings was irrelevant.[6]

The intervention petition was heard by a hearing examiner, who granted the intervention.[7] Chesapeake filed a petition for interlocutory appeal of the examiner's order, which DAAEP opposed.[8] The full Commission affirmed the examiner's order

---

[2] *Id.* at 2, ¶ 7.

[3] *Id.* at 3.

[4] *Id.* at 3, ¶¶ 5–6, 10–11.

[5] *See generally id.* at 3.

[6] *Id.* at 4.

[7] *In re Chesapeake Utils. Corp.*, No. 15-1734, Order No. 8860 (Del. Pub. Serv. Comm'n Mar. 11, 2016).

[8] *See generally* R. at 7, 8.

by a four-to-one vote.[9] The parties then executed a settlement agreement, which the Commission accepted.[10] The settlement resolved all of the issues in the case other than DAAEP's standing to intervene, which it preserved for appeal.[11]

This appeal followed, limited to DAAEP's standing to intervene. The parties have agreed only to appeal the examiner's decision, affirmed by the Commission.

## THE PARTIES' CONTENTIONS

### *I. The Commission's Statutory Jurisdiction*

Chesapeake argues that the Commission exceeded its statutory authority to regulate a public utility's rates and services because the statute does not provide the authority to balance or consider the competitive interests of unregulated competitors to regulated companies. It points to tribunals in other states have held that competitors of public utilities should not be able to intervene in public service commission proceedings.

DAAEP argues that the Commission has statutory authority to conduct evidentiary hearings and discretion to determine who may intervene in its proceedings. It points to prior dockets in which it has been allowed to intervene. And it distinguishes all of the authority cited by Chesapeake, contending that the

---

[9] *In re Chesapeake Utils. Corp.*, No. 15-1734, Order No. 8878 (Del. Pub. Serv. Comm'n May 17, 2016).

[10] *In re Chesapeake Utils. Corp.*, No. 15-1734, Order No. 8982 (Del. Pub. Serv. Comm'n Dec. 20, 2016).

[11] *Id.*, Ex. 1 at 1.

cases apply different statutory and regulatory schemes and that some fail to discuss intervention at all.

## *II. Whether The Commission's Orders Were Based on Substantial Evidence*

Chesapeake argued before the Commission that DAAEP did not satisfy the "public interest" prong of the Commission's intervention rule because (1) Senate Joint Resolution 7 demonstrated that the policy of the State of Delaware is to encourage natural gas expansion, and (2) earlier interventions by DAAEP were not a relevant criterion in determining whether a party may intervene. On appeal, Chesapeake argues that the hearing examiner's conclusion that Chesapeake was "attempting to virtually extinguish the economic interests of alternative fuel dealers and the economic interests of Kent County and Sussex County residents who do not reside near Chesapeake's mains[12] and who rely upon alternative fuels" was not supported by sufficient evidence and was "pure supposition."[13]

DAAEP argues that Chesapeake's argument does not address the totality of the hearing examiner's reasoning or even mention the Commission's reasoning in affirming the intervention. The hearing examiner, DAAEP contends, based his determination on several factors. The mention of Senate Joint Resolution 7 was only in response to Chesapeake's argument. And finally, DAAEP argues, the hearing

---

[12] As used here, a "main" is "a principal pipe or duct in a system used to distribute water, gas, etc." *Main*, *Dictionary.com*, http://www.dictionary.com/browse/main?s=t (last visited May 30, 2017)

[13] *Chesapeake Utils. Corp.*, Order No. 8860 ¶ 27 (Mar. 11, 2016).

examiner's reasoning relating to earlier interventions was only to cite them for the proposition that DAAEP had an interest in the proceedings and that intervention was in the public interest.

## STANDARD OF REVIEW

Both parties agree that the standard of review is found at 26 *Del. C.* § 510: "[T]he Commission's findings shall be upheld if they are supported by sufficient evidence, free of error of law and not arbitrary or capricious. When factual issues are reviewed the Court shall take due account of the presumption of official regularity and the quasi-legislative function and specialized competence of the Commission."[14] "A reviewing court may accord due weight, but not defer, to an agency interpretation of a statute administered by it. A reviewing court will not defer to such an interpretation as correct merely because it is rational or not clearly erroneous."[15] "Where an agency interpretation is longstanding and widely enforced, a reviewing court would ordinarily accord greater weight to the underlying agency interpretation of the statute in determining, for itself, the optimal interpretation."[16]

## DISCUSSION

### *I. The Commission's Statutory Jurisdiction*

The Commission exceeded its statutory authority when it granted DAAEP's

---

[14] 26 *Del. C.* § 510(d).

[15] *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 382–83 (Del. 1999).

[16] *Id.* at 382 n.8.

petition to intervene because the Commission may not consider the competitive interests of unregulated competitors.

Chesapeake frames the issue as one of the Commission's "authority to balance (or even to consider) the competitive interest of unregulated fuel providers vis-a-vis a regulated utility." The primary question is whether the Commission, having adopted rules that permit entities and individuals to intervene, erred as a matter of law by permitting an unregulated competitor of the utility to intervene in rate proceedings. The Court finds that the Commission erred when it allowed an unregulated competitor to intervene to protect its own interests.

*A. Delaware's Utility Regulatory Scheme*

In Delaware, the Public Service Commission has "exclusive original supervision and regulation of all public utilities and also over their rates . . . so far as may be necessary for the purpose of carrying out" the provisions of Title 26 of the Delaware Code.[17] As a creature of the Delaware legislature, the Commission's "powers are limited to those conferred by the legislature."[18] The Superior Court has held that section 201 of the Commission's enabling statute "indicates . . . that the legislature specifically created the Commission for the purpose of balancing the

---

[17] 26 *Del. C.* § 201(a).

[18] *E. Shore Nat. Gas Co. v. Del. Pub. Serv. Comm'n*, 635 A.2d 1273, 1277 (Del. Super. Ct. 1993) (citing *Pub. Serv. Comm'n v. Diamond State Tel.*, 468 A.2d 1285 (Del. 1983)), *aff'd*, 637 A.2d 10 (Del. 1994), *overruled on other grounds by DiPasquale*, 735 A.2d 378.

interests of the *consuming public* with those of regulated companies."[19]

Delaware public utilities are prohibited from imposing "any unjust or unreasonable or unduly preferential or unjustly discriminatory individual or joint rate."[20] And in order to change their rates, utilities must notify the commission, which is authorized to hold proceedings on the lawfulness of the rate.[21] Those proceedings must be "conducted in accordance with the rules of practice and procedure prescribed by the Commission."[22]

The Commission's Rules of Practice and Procedure specify what is required to intervene in a rate proceeding.[23] In particular, a petition for intervention must include "a concise statement of why the petitioner's interest will not be adequately represented by the parties to the proceeding or why participation in the proceeding would be in the public interest."[24]

The statute and Delaware case law do not give the Court much guidance on this question of first impression. Neither the parties nor the Court's own research have uncovered another Delaware case which has dealt with whether an unregulated

---

[19] *Id.* (citing *Delmarva Power & Light Co. v. City of Seaford*, 575 A.2d 1089, 1097 (Del. 1990)) (emphasis added).

[20] *Id.* § 303(a).

[21] *Id.* § 304(a), (b); *id.* § 305.

[22] *Id.* § 503(a).

[23] 26-1001-2.0 *Del. Admin Code* § 2.9.

[24] *Id.* § 2.9.1.3.

energy company may intervene in rate proceedings to protect its competitive interests.

The Commission's practice has been to grant intervention liberally, and it has at other times granted DAAEP's requests to intervene.[25] While the Court affords some weight to its practice, it does not end the Court's analysis. The Commission's authority to determine whether proposed rates are unjust, unreasonable, unduly preferential, or unjustly discriminatory is necessarily limited, by the statute, to the relationship of the utility to its subscribers. And although the Commission has the authority to prescribe a rule for intervention in its proceedings, it may not administer that rule in such a way as to extend its jurisdiction to areas not contemplated by the statute. While the statute itself does not define who the members of the "consuming public" are, it is abundantly clear that DAAEP and its members would not be included given the fact that their sole interest here is as dealers of a competing product.

This outcome also makes sense as a matter of policy. If permitted to intervene, unregulated competitors may participate in discovery to the same extent as other intervenors, increasing burdens on the State (through the Commission and the Division of the Public Advocate), the regulated utility and its ratepayers, and other proper intervenors. A more carefully circumscribed intervention standard thus not only accords with the Commission's statutory grant of authority, but also effectuates the public interest by keeping the cost of rate proceedings in check.

---

[25] *In re Chesapeake Utils. Corp.*, No. 15-1734, Order No. 8878 ¶ 18 (Del. Pub. Serv. Comm'n May 17, 2016).

## B. *The Case Law of Other Jurisdictions*

The Court has reviewed the cases Chesapeake cites from other jurisdictions. While not binding on this Court, they uniformly demonstrate the trend among other jurisdictions that apply similar statutory schemes: public service commissions may only grant intervention when authorized by governing statute, and unregulated competitors may not intervene in a regulated utility's rate proceeding.

*Central Maine Power Co. v. Public Utilities Commission* illustrates the proposition that the jurisdiction of a public service commission is limited to its statutory grant of authority.[26] In *Central Maine*, the Supreme Judicial Court held that an oil-dealer association lacked standing to intervene in rate-making proceedings concerning a regulated utility.[27] The association, the Court held, was "outside the class whose interests the rate regulation facets of the public utility statute seek to protect" and, as a matter of policy, "the rate regulation objectives of the statute [could] be realized without need to confer intervenor status in a rate investigation on private entities such as" the association.[28]

DAAEP argues, forcefully, that the Maine case should be distinguished because that state's intervention rule was more restrictive than Delaware's, permitting only those that "are directly and substantially affected by the proceeding" to

---

[26] *See* 382 A.2d 302 (Me. 1978).

[27] *Id.* at 311–12.

[28] *Id.* at 312.

intervene.[29] DAAEP also points out that the holding in *Central Maine* has been superseded by new rules permitting intervention by an "interested person" in the commission's discretion.[30] Still, the case's reasoning is instructive: the statutory scheme in Delaware, like Maine's,[31] does not contemplate the Commission protecting the interests of unregulated competitors. It follows that an unregulated competitor's intervention in Commission rate proceedings here would likewise be improper.

*Pennsylvania Petroleum Association v. Pennsylvania Power & Light Co.* further illustrates the limitations on a public service commission's ability to protect the interests of non-participants in a regulatory scheme.[32] The case raises the issue in the context of a rate-case intervenor's standing to appeal, and is premised upon case law requiring that a party be "aggrieved" by the decision of the administrative body.[33] But the case is not entirely apposite, because the court ultimately held that the association of fuel dealers lacked standing to appeal based on the fact that competition between the utility and the association was not governed by the same

---

[29] *Id.*

[30] *See* 65-407-110 Me. Code R. § 8(B)(2).

[31] *See generally* Me. Stat. tit. 35-A, § 101 ("The basic purpose of this regulatory system as it applies to public utilities subject to service regulation under this Title is to ensure safe, reasonable and adequate service, to assist in minimizing the cost of energy available *to the State's consumers* and to ensure that the rates of public utilities subject to rate regulation are just and reasonable *to customers and public utilities.*" (emphasis added)).

[32] 377 A.2d 1270 (Pa. Commw. Ct. 1977).

[33] *See id.* at 1271, 1273.

regulatory scheme.[34]

Chesapeake also cites *Cole v. Washington Utilities & Transportation Commission*.[35] *Cole* was an appeal of a decision of the Utilities and Transportation Commission which denied an association of fuel oil dealers' petition for intervention because the commission's standard, either under its "substantial interest" or "public interest" test, did not embrace the association, and because the statute did not grant the commission "authority to consider the effect of a regulated utility upon a nonregulated business.[36] DAAEP argues that Washington's standard was more restrictive than Delaware's, and that even Washington's standard has been liberalized and now permits competitors to intervene. But as before, the case still demonstrates that a public service commission's jurisdiction is necessarily limited by its enabling statute.

*Dayton Communications Corp.*[37] and *In Re Michigan Consolidated Gas Co.*[38] support the same basic proposition as *Cole*. *Dayton* involved an unregulated competitor of a regulated telephone company that wanted to purchase wiring inside

---

[34] *Id.* at 1273 ("Because we can find here no evidence of a regulatory scheme in which both parties participate which prohibits competition between them, we must conclude that [the intervenor] does not have a substantial interest in the [Commission] order sufficient to bring this appeal.")

[35] 485 P.2d 71 (Wash. 1971) (en banc).

[36] *Id.* at 73–74.

[37] *Dayton Commc'ns Corp. v. Pub. Utils. Comm'n*, 414 N.E.2d 1051 (Ohio 1980) (per curiam).

[38] No. 282810, 2010 WL 199571 (Mich. Ct. App. Jan. 21, 2010) (per curiam).

a customer's buildings.[39]  The wiring was installed and owned by the regulated company.[40]  The Ohio Supreme Court held that the commission could not "balance the interests of a public utility . . . vis-a-vis its competitors in a complaint proceeding."[41]  DAAEP points out, accurately, that the case is disconnected from the standard for intervention before a public utility commission.  But the case, like the others, is useful for understanding the limits of the commission's jurisdiction, not for its illustration of the intervention standard.

In *In re Michigan Consolidated Gas Co.*, the Michigan Court of Appeals sustained its public service commission's denial of two competitors' motions to intervene.[42]  The court stated that "we are not convinced of the propriety of holding that a business competitor is entitled to intervene as a matter of right in its competitor's case absent a showing of something more than possible future damage to the competitor's bottom line.  Such a rule could easily lead to abuse."[43]  DAAEP argues that the intervention-as-of-right test used by the Michigan commission is more restrictive than the Delaware standard and more akin to a standing test.  It points out that the commission in Michigan also has a broader permissive intervention rule

---

[39] *Dayton*, 414 N.E.2d at 1052.

[40] *Id.*

[41] *Id.* at 1054.

[42] *In re Mich. Consol. Gas Co.*, 2010 WL 199571, at *6.

[43] *Id.*

which has been used to permit competitors to intervene in proceedings.[44] As Chesapeake points out, however, the permissive intervention case cited by DAAEP is a commission order only and was not appealed. And, as before, the case demonstrates that intervention rules must be applied consistently with the agency's enabling statute.

In *Commonwealth ex rel. Mid-Atlantic Petroleum Distributors Association*, Virginia's Division of Energy Regulation held that an association of unregulated sellers of alternative energy sources did not have standing to challenge a regulated utility's rates.[45] Chesapeake argues that the case demonstrates that unregulated providers have no standing in rate cases because protecting unregulated providers from competitive injury is not a statutory concern of the commission. DAAEP merely points out that the intervention standard in Virginia was a higher standard than Delaware's, requiring a "legal right" to bring a challenge. But the case remains useful for its essential holding.

A decision of the New York commission, *In re Promotional Activities by Gas and Electric Corps.*, demonstrates that a public service commission "cannot be called upon to protect a nonregulated industry from competition by a regulated utility company when it is unable to protect the latter from the competition of the former."[46]

---

[44] *See In re DTE Gas Co.*, No. U-17691, slip op. at 5–6 (Mich. Pub. Serv. Comm'n Nov. 22, 2016).

[45] No. PUE830010, 1983 WL 20094, at *3 (Va. S.C.C. Feb. 15, 1983).

[46] 68 P.U.R.3d 162, 169 (N.Y. Pub. Serv. Comm'n 1967).

The New Jersey commission in *Superior Propane Co. v. South Jersey Gas Co.,* arrived at a similar conclusion.[47] DAAEP seeks to distinguish both cases by noting that the competitors were permitted to bring the complaints and receive a decision on the merits. But DAAEP's argument misses the mark, because both decisions ultimately resulted in the commissions finding themselves without jurisdiction to consider competitors' claims.

Two more cases accord with this general theme. The first, *Public Service Co. v. Trigen-Nations Energy Co., L.L.L.P,* was a case in which the Colorado Supreme Court affirmed its public utility commission's denial of intervention where allowing the intervention of competitors in the rate agreement by-pass procedure would have frustrated the statute's purpose.[48] DAAEP points out that the intervention standard differs from Delaware's and that the court decided the case under an abuse of discretion standard. But the case nonetheless shows that intervention must be granted only in accordance with the enabling statute.

The second, *In re Chittenden Recycling Services,* deals with a state environmental board which denied intervention to a competitor.[49] As DAAEP rightly noted, the state environmental board's intervention and party-status standard envisioned a property interest and not merely an interest in competing with the

---

[47] 60 P.U.R.3d 217 (N.J. Bd. of Pub. Util. Comm'rs 1965).

[48] 982 P.2d 316, 319, 326–27 (Colo. 1999) (en banc).

[49] 643 A.2d 1204, 1205–06 (Vt. 1994).

15

potential permittee. Yet *Chittenden* is still helpful insofar as it shows, again, that agencies may only allow intervention in a manner consistent with their enabling statutes.

The case law from other jurisdictions, while not binding on this Court, is persuasive despite the diversity of regulatory schemes and intervention standards the reviewing courts described. A public service commission may not grant intervention in a manner inconsistent with its statutory grant of authority.

The order affirmed by the Commission granted the DAAEP's intervention petition based primarily on DAAEP's interest as a competitor in the outcome of the proceedings.[50] Such an intervention policy is far too liberal because it ignores the Commission's status as a creature of statute. The presence of intervenors on a Commission docket must be limited to those that have an interest in the proceedings that the Commission is authorized to consider. Intervention based upon a purely economic interest as a competitor would grant the Commission unlimited authority not contemplated by the General Assembly.

*II. Whether The Commission's Orders Were Based on Substantial Evidence*

Having reversed the Commission's orders as to intervention on the preceding ground, the Court does not consider Chesapeake's second claim, that the Commission failed to base its order on substantial evidence when it concluded that Chesapeake's offerings would virtually extinguish the interests of fuel oil dealers and when it relied

---

[50] *In re Chesapeake Utils. Corp.*, No. 15-1734, Order No. 8860 ¶¶ 1–3, 19, 24 (Del. Pub. Serv. Comm'n Mar. 11, 2016).

upon DAAEP's intervention in earlier cases.

Additionally, Chesapeake failed to preserve the argument about the hearing examiner's remark by raising it before the Commission. "[S]tandalone arguments in footnotes are usually not considered fairly raised in any court."[51] At best, Chesapeake's appeal of the hearing examiner's order *mentioned* the statement it has now placed at issue, but it failed to challenge it meaningfully in the body of its appeal.[52] And a thorough reading of the transcript of the hearing before the Commission disclosed no discussion of the issue.[53] The Court will not decide a matter that was never properly put before the Commission.

## CONCLUSION

The Commission has no statutory authority to consider the competitive interests of unregulated providers in a rate proceeding. Order 8860, granting DAAEP's intervention, and order 8878, affirming the hearing examiner's order, are thus **REVERSED** and **VACATED**.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[51] *Sabee Envtl. & Constr., Inc. v. Summit Dredging, LLC*, 149 A.3d 517 (Table), 2016 WL 5930270, at *1 (Del. Oct. 12, 2016).

[52] *See* R. Ex. 7, at 2 n.5.

[53] R. at 9.